O’Brien, J.
 

 The petitioner and other property owners have challenged the validity of a local assessment for regulating and improving that part of South Pearl street between Gansevoort street and a point 340 feet south of McCarty avenue in the city of Albany. The county judge of the county of Albany, before whom this proceeding was instituted, vacated the assessment, and the general term has reversed his determination. By chapter 139 of the Laws of 1870, a portion of the town of Bethlehem was annexed to the city of Albany, and a turnpike country road became an extension of South Pearl street. By chapter 290 of the Laws of 1880, the city was authorized to issue its bonds to pay for the draining, forming and grading, paving and flagging this-part of the street, whenever, pursuant to existing laws, the authorities had provided for the expense by a local assessment, and the work had been completed and apportioned, and the proceedings confirmed. The bonds were payable in five years, and the payment of the assessment for the work was extended for a like period from the time of the confirmation.
 

 On the 30th of August, 1880, the common council passed the ordinance providing for making the improvement. That body had before it at the time a petition signed by certain property owners on the line of the work, requesting that the improvement be made. Various proceedings were had by the city authorities touching the assessment and the contract for the performance of the work, and, at least, an attempt was made to comply with all the requisites of the statute in order to make a valid assessement, if indeed all these provisions were not absolutely followed. The-common council confirmed the assessment and apportionment.
 
 *242
 
 October 17, 1881. This was the situation when chapter 298 of the laws of-1883, entitled “ An act to provide for the government of the city of Albany, ” was passed. This act, which was substantially a new charter for the city, revised, re-arranged and consolidated existing laws, and introduced some new and important provisions in regard to street assessments, and the methods and procedure for a review and correction of the same. These provisions are found in the three first sections of title eleven. Section one provides that “No assessment that may .hereafter be levied shall be void, or shall be vacated by any court because of a failure on the part of the contractor to comply in the execution of the work with all the requirements of law, or the contract in respect thereto.”
 

 Then follow in the same section provisions authorising any taxpayer or property owner liable to be assessed for the work to institute proceedings against the contractor in the courts to enforce the performance of the contract, to prevent fraud, and to reduce the sum to be paid to such contractor in certain cases. The section concludes with these words: “And all assessments heretofore levied in the city of Albany, proceedings to vacate, review or set aside which were not pending January 15, 1883, are hereby validated and confirmed.” It is conceded that no proceedings were pending at the above date to vacate, review or set aside this assessment. The second and third sections are as follows:
 

 “ Sec. 2. If in the proceedings relative to
 
 any
 
 assessment or assessments for local improvements in the city of Albany, or in the proceedings to collect the same, any fraud or defect in the work or substantial error shall be alleged to exist or have been committed, the party aggrieved thereby
 
 may apply
 
 to have the assessment vacated or reduced, or both, to a
 
 judge of the supreme icourt, at special tefrm, or at
 
 chambers,
 
 or to the county judge,
 
 who .shall thereupon, upon due notice to the counsel of the corporation of said city, and to the contractor and his sureties, or any other person, if they, or either of them, be proper parties, proceed forthwith to hear the proofs and allegations of -the parties.
 

 “Sec. 3. If, after such hearing, it shall be finally decided that the alleged fraud or defect in the work or substantial error exists or has been committed, the said assessment shall be vacated, except •as hereinbefore otherwise provided, and the lien created thereby, or by any subsequent proceeding, shall, except as hereinbefore otherwise provided, cease; and hereafter
 
 no suit or action
 
 in the nature, of a bill
 
 in equity or
 
 otherwise, shall be
 
 commenced
 
 for the vacation of
 
 any assessment in said
 
 city, or to remove a cloud upon title arising from any assessment hereafter made. In case the assessment shall not be vacated, the assessment may be reduced or judgment may be given as hereinbefore provided.
 
 Owners
 
 of property shall
 
 hereafter,
 
 in proceedings to reduce or vacate or stay payment of assessments, be
 
 confined
 
 to the form of proceeding in this title mentioned. The court may, in a proper, case, in proceedings under this title, direct that any issue or issues of fact be tried before a jury.”
 

 In the month of October, 1886, and just before the expiration
 
 *243
 
 of the five years to which the payment of the assessments had been extended, and when the bonds were about to become due, the petition for the vacation of the assessment in this case was filed with the county judge. It contains numerous allegations against the validity of the assessment as originally levied, based upon alleged errors, omissions and irregularities in the proceedings by the city authorities, and upon alleged frauds by the contractor in procuring and carrying out the contract for the performance of the work. Much of the argument contained in the very able and elaborate brief submitted by the learned counsel for the petitioner is devoted to showing that the assessment was invalid by reason of non-compliance with the statute, and that these defects, if they existed, are not cured by the last paragraph of § 1, title 11 of the charter of 1883, which declared the assessment valid and confirmed.
 

 If this was the only question in the case, it might be necessary to discuss the point upon which it depends, namely, the power of the legislature under the constitution to validate burdens of this character. This question has often been examined and discussed before in this court, and as we are of the opinion that there is another question which is fatal to the petitioner in this proceeding, we do not think it necessary, nor indeed hardly proper, to pass upon the effect of such legislation in this particular case.
 

 We think that the county judge had no jurisdiction to vacate the assessment nor to entertain the proceeding, and consequently that the general term properly reversed his determination. Whatever jurisdiction the county judge has to review local assessments like this is conferred solely by the second section of title eleven of the act of 1883. It is not claimed that he had any such jurisdiction prior to the passage of that act, and the question is whether such jurisdiction as is conferred by the second section applies to and embraces assessments made, completed and confirmed eighteen months prior to its enactment. The first and third sections in terms apply only to assessments “ hereafter made.” The scope of the second section, it is true, does not appear to be expressly limited by these
 
 words;
 
 but in view of the position that it occupies in the title, and its relation to and connection with the other sections, and the universal rule that statutes are to be construed as prospective, in the absence of some words manifesting an intent on the part of the legislature to give them a retroactive operation,, we cannot doubt that it was the intention of the legislature to apply this new jurisdiction to future assessments only.
 
 People
 
 v. O'Brien, 111 N. Y., 59; 19 St. Rep., 173;
 
 In re Van
 
 Kleeck, 121 N. Y., 701; 31 St. Rep., 896;
 
 Sanford
 
 v. Bennett, 24 N. Y., 20;
 
 Whitney
 
 v. Thomas, 23 id., 281-4.
 

 But the three sections referred to contain, when read together, provisions which show very clearly that the jurisdiction conferred upon the county judge to review and vacate assessments upon proceedings by petition was not intended by the legislature to apply to assessments previously made. One of these provisions is the one which in express words validates and confirms “ all assessments heretofore levied in the city of Albany, proceedings to vacate,,
 
 *244
 
 review and set aside which were not pending January 15, 1883.” This assessment is plainly within this provision, and as the court below pertinently suggested, it would be quite unreasonable to impute to the legislature an intent to validate and confirm this assessment, and in the same statute make provision for vacating it by the county judge. The third section in terms prohibits suits in equity
 
 “
 
 hereafter ” to vacate assessments or to remove a cloud upon title arising from any assessment “ hereafter made, ” and then adds this provision : “ Owners of property shall hereafter in proceedings to reduce or vacate or stay the payment of assessments be confined to the form of proceedings in this title mentioned.” Language .such as this naturally and necessarily leads to the conclusion that the law makers intended that .the new procedure by petition .should operate only upon future assessments.
 

 We do not hold that the broad language of the statute validating and confirming all past assessments as to which no proceedings to vacate or review were pending January 15, 1883, operated, or ■could operate to put this assessment Beyond the reach of all judicial examination. The old remedy by suit in equity was not in terms abolished nor prohibited as to assessments in the condition that this was. All we hold is that the county judge had no jurisdiction to vacate or review it upon petition.
 

 The order of the general term should therefore be affirmed, with costs.
 

 All concur.